In the

# UNITED STATES COURT OF APPEALS

for the Seventh Circuit

## No. 19-3211

TIM JON SEMMERLING,

Plaintiff-Appellant,

v.

CHERYL T. BORMANN and
UNITED STATES OF AMERICA,

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
18 C 6640 — Robert W. Gettleman, *Judge.*

# BRIEF OF THE UNITED STATES

JOHN R. LAUSH, Jr.
United States Attorney
 for the Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois  60604

THOMAS P. WALSH
Assistant United States Attorney
Civil Division Chief

KATHLEEN M. FLANNERY
Assistant United States Attorney
(312) 353-7223

# Table of Contents

Table Of Authorities ................................................................... ii

Jurisdictional Statement ............................................................ 1

Issues Presented for Review ...................................................... 2

Statement of the Case .............................................................. 3

Summary of the Argument ...................................................... 11

Argument............................................................................... 12

    I.    Standard of Review ..................................................... 12

    II.   Semmerling Has Basically Waived Any Meaningful Argument on Appeal ............................................................... 12

    III.  The District Court Properly Dismissed Semmerling's Negligence Claim Against the United States.................................. 16

    IV.  The District Court Properly Dismissed Semmerling's Intentional Infliction of Emotional Distress Claim Against the United States ............................................................. 20

    V.   Semmerling's FTCA Claims Are Barred by the Foreign-Soil Exception ...................................................................... 24

Conclusion .............................................................................. 29

Certificate of Service

# Table of Authorities

## Cases

*Al Janko v. Gates*, 831 F. Supp. 2d 272 (D.D.C. 2011) .................................... 25

*Al-Zahrani v. Rumsfeld*, 684 F. Supp. 2d 103 (D.D.C. 2010) .......................... 25

*Andersen v. Village of Glenview*, 82 F. App'x 625 (7th Cir. July 21, 2020) .... 23

*Andrews v. Marriott Intern., Inc.*, 61 N.E.3d 1105 (Ill. App. 2016) .......... 18, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................. 20

*Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185 (7th Cir. 2011) ..................... 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 20

*Bernard v. Sessions*, 881 F.3d 1042 (7th Cir. 2018)........................................ 14

*Boumediene v. Bush*, 553 U.S. 723 (2008) ....................................................... 25

*Brundage v. United States Information Agency*, 00-3124, 2000 WL 1909634
   (7th Cir. Dec. 27, 2000)...................................................................................... 28

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803
   (7th Cir. 2018) ..................................................................................................... 17

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................... 20

*Cook v. Winfrey*, 141 F.3d 322 (7th Cir. 1998) ................................................. 23

*Cooney v. Chi. Pub., Schs.*, 943 N.E.2d 23 (Ill. App. Ct. 2010)....................... 17

*DeShaney v. Winnebago County Dep't. of Soc. Serv.*, 489 U.S. 189 (1989) ..... 17

*First Springfield Bank & Tr. v. Galman*, 720 N.E.2d 1068 (Ill. 1999) ........... 16

*Fuqua v. U.S. Postal Serv.*, 956 F.3d 961 (7th Cir. 2020)............................... 12

*Gross v. United States*, 771 F.3d 10 (D.C. Cir. 2014).................................27-28

*Harbury v. Hayden*, 522 F.3d 413 (D.C. Cir. 2008)..........................................27

*Henry v. Hulett,* 969 F.3d 769 (7th Cir. 2020) .................................................15

*Hernandez v. Mesa*, 140 S. Ct. 735 (2020) .......................................................25

*Honaker v. Smith*, 256 F.3d 477 (7th Cir. 2001) .............................................22

*Jablonski v. Ford Motor Co.*, 995 N.E.2d 1138 (Ill. 2011) .............................18

*LM ex rel. KM v. United States*, 344 F.3d 695 (7th Cir. 2003) ..................17-18

*Mahaffey v. Ramos*, 588 F.3d 1142 (7th Cir. 2009)..........................................15

*Millbrook v. United States*, 569 U.S. 50 (2013) ...............................................25

*Mohammed v. Hamdard Ctr. for Health & Human Servs.*,
  2020 WL 401966 (Ill. App. Ct. Jan. 22, 2020) ..........................................23-24

*O'Brien v. Village of Lincolnshire*, 955 F.3d 616 (7th Cir. 2020) ...................12

*Schweihs v. Chase Home Finance*, 77 N.E.3d 50 (Ill. 2016) ...........................21

*Soriano v. Town of Cicero*, 521 F. App'x. 565 (7th Cir. 2013) ........................12

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) ...............................................25

*Swearnigen–El v. Cook Cty. Sheriff's Dept.*, 602 F.3d 852
  (7th Cir. 2010) ........................................................................................20-21, 22

*Tedrick v. Cmty. Res. Ctr., Inc.*, 920 N.E.2d 220 (Ill. 2009) ...........................19

*United States v. Beavers*, 756 F.3d 1044 (7th Cir. 2014) ............................14-15

*United States v. Zannino*, 895 F.2d 1 (1st Cir. 1990) ......................................15

*UWM Student Ass'n v. Lovell*, 888 F.3d 854 (7th Cir. 2018) ..........................12

*Ziya v. Global Linguistic Solution*, 11-CV-01398, 2012 WL 1758611
  (D. Or. May 15, 2012) ....................................................................................28

## Statutes

10 U.S.C. § 949 ............................................................................. 3

28 U.S.C. § 1291 ........................................................................... 2

28 U.S.C. § 1346(b)(1) ..................................................... 1, 22, 25

28 U.S.C. § 1367(a) ....................................................................... 1

28 U.S.C. § 2679 ..................................................................... 6, 25

28 U.S.C. § 2680(h) ....................................................................... 7

28 U.S.C. § 2680(k) ............................................. 2, 11, 24, 25, 27

28 U.S.C. §§ 1346(b) ..................................................................... 1

42 U.S.C. § 2000e .......................................................................... 5

## Rules

Fed. R. App. P. 4(a)(1)(B)(i) ........................................................ 2

Fed. R. App. P. 4(a)(4)(A)(iv) ...................................................... 2

Fed. R. App. P. 28(a)(6).............................................................. 13

Fed. R. Civ. P. 8(a)(2)................................................................. 20

## Jurisdictional Statement

Appellant's jurisdictional statement is not complete and correct. Accordingly, co-defendant appellee the United States of America provides the following jurisdictional statement pursuant to Circuit Rule 28(b).

Plaintiff Tim Jon Semmerling brought this action in district court against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, alleging that he had suffered intentional infliction of emotional distress (Count IV) and that the United States failed to protect him (Count III) while he served as a mitigation specialist at the Military Commission convening at the Naval Station, Guantanamo Bay, Cuba. R. 1.[1] Semmerling also brought common law claims of failure to protect (Count III), defamation (Counts I and II), and intentional infliction of emotional distress (Count IV) against the private criminal defense attorney, co-defendant appellee Cheryl Bormann. *Id.* District courts have jurisdiction to consider FTCA claims under 28 U.S.C. § 1346(b)(1) for claims involving the wrongful and negligent conduct of federal employees acting within the scope of their employment. If the court had jurisdiction over the FTCA claims, it would have had supplemental jurisdiction over the claim against Bormann under 28 U.S.C. § 1367(a).

---

[1] "R." references are to numbered items in the Record on Appeal, which correspond to the district court's docket.

The court granted defendants' motion to dismiss plaintiff's complaint with prejudice on September 11, 2019, and entered judgment against plaintiff, resolving all claims. R. 41, 42. Plaintiff filed a motion for reconsideration on October 9, 2019. R. 43. The motion was timely under Rule 59(e) and was filed within 28 days of entry of judgment, so it tolled the time to appeal. Fed. R. App. P. 4(a)(4)(A)(iv). The court construed the motion for reconsideration under Rule 59(e) and denied the motion on October 11, 2019. R. 44. Plaintiff then filed a notice of appeal on November 4, 2019, within the 60 days allowed by Fed. R. App. P. 4(a)(1)(B)(i). R. 45. Thus, this court has jurisdiction under 28 U.S.C. § 1291 to review the district court's final decision.

## Issues Presented for Review

1.     Whether Semmerling waived *any* argument regarding the reasons for the district court's dismissal by failing to address them in his appellate brief.

2.     Whether the district court correctly dismissed Semmerling's claims against the United States (negligence and intentional infliction of emotional distress) for failure to state a claim.

3.     Whether the dismissal of the claims against the United States should be affirmed on the alternative ground that they are barred by the Federal Tort Claims Act's foreign-soil exception, 28 U.S.C. § 2680(k).

## Statement of the Case

Plaintiff Tim John Semmerling is a "mitigation specialist."[2]  R. 1 ¶¶ 12,

24.  Cheryl Bormann, Major Matthew Seeger, Michael Schwartz, and Edwin

Perry are all attorneys who are serving (or have served) on the criminal defense

team for Walid bin Attash ("the accused")—one of the five men accused of

plotting the 9/11 terrorist attacks and who is facing charges before a Military

Commission convening at Naval Station, Guantanamo Bay, Cuba (the

"Military Commission").  *Id.* ¶¶ 13-14, 16-17, 25; *see also* R. 25 at 1-2.  Bormann

is a private criminal defense attorney specializing in death-penalty defense,

and she serves as the capital defense counsel for the accused.[3]  *Id.* ¶ 13; R. 1 ¶

13.  Major Seeger, a Department of Defense ("DoD") military member, and

Perry, a DoD civilian employee, are currently also serving as defense counsel

for the accused.  *Id.* ¶¶ 16-17.  Schwartz was a DoD military member and

previously served as defense counsel for the accused.  *Id.* ¶ 14.  Brigadier

General Baker is the Chief Defense Counsel at the Military Commissions

---

[2]  Mitigation specialists are "individuals trained or experienced in the development and presentation of evidence for the penalty phase of a capital case." *Federal Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense Representation II-7,* Commentary (1998), at p. 27 (available at: https://www.uscourts.gov/sites/default/files/original_spencer_report.pdf).

[3]  Under the Military Commissions Act of 2009, 10 U.S.C. § 949, *et seq.*, a defendant facing the death penalty has the right, to the greatest extent practicable, to an attorney "learned" in the procedures and substance of capital law.  10 U.S.C. § 949a(b)(2)(C)(ii).  Bormann is the accused's "learned defense counsel."

Defense Organization and, in that role, oversees all of the defense teams. *Id.* ¶¶ 15, 69. At all relevant times, Brigadier General Baker, Major Seeger, Schwartz, and Perry were working within the scope of their federal employment for the Department of Defense.

Semmerling was hired by the Military Commission Defense Organization–Office of the Military Commissions as a contractor. *Id.* ¶¶ 25-27. Semmerling is gay, and he stated that he informed Bormann of his sexuality after he was hired. *Id.* ¶ 36. Semmerling claims that Schwartz and Bormann instructed him not to discuss his sexuality with the accused or even members of the defense team because of the risk that it would be revealed to the accused. *Id.* ¶¶ 36, 41. Semmerling stated the accused is a member of the terrorist organization, al-Qaeda, and that his "political, personal beliefs and religion strongly condemn homosexuality, and he would not tolerate a homosexual person as his mitigation specialist on his defense team." *Id.* ¶ 83.

Semmerling claims that Brigadier General Baker ordered him to a meeting on October 23, 2015, where the general directed Schwartz and Bormann to order Semmerling to leave Guantanamo. *Id.* ¶ 47. Semmerling claims that after his dismissal, he learned that Bormann had told the defense team that she and Schwartz had informed the accused that Semmerling was gay. *Id.* ¶ 49. Semmerling also claims that Bormann told the defense team that she and Schwartz believed that Semmerling was "pursuing a homosexual

interest" with the accused and that Semmerling had become "infatuated" with the accused. *Id.* Likewise, Semmerling claims that Bormann told the accused that Semmerling was pursuing a romantic relationship with the accused. *Id.* ¶ 76. Semmerling also claimed that the defendants stated that Semmerling had a "pathological and self-serving streak in management of relationships with high profile terrorism defendants." *Id.* ¶ 51. Semmerling says that Schwartz, Bormann, Perry, Baker, and Seeger engaged in "character assassination" and it was "their objective to ensure Semmerling never works on a capital or military defense team again." *Id.* Semmerling claims that the statements allegedly made to the accused and the defense team were false, that the statements damaged his professional reputation, and that his termination was wrongful. *Id.* ¶¶ 50, 61-66, 99.

Semmerling has brought a series of lawsuits in connection with his dismissal. In *Semmerling, et al. v. United States*, *et al.*, No. 17 C 3021 (N.D. Ill.) ("*Semmerling I*"), Semmerling brought claims for defamation and intentional infliction of emotional distress as well as an employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Semmerling voluntarily dismissed his Title VII claim, and the individual defendants aside from Bormann moved to dismiss the complaint on numerous grounds including that Semmerling had failed to exhaust his administrative remedies under the FTCA. *Semmerling I,* R. 16. The court

dismissed Semmerling's complaint without prejudice for failure to exhaust his FTCA administrative remedies. *Semmerling I*, R. 53.

Following the first dismissal, Semmerling brought suit in Illinois state court against Bormann, Seeger, Baker, Perry, and Schwartz, again alleging various defamation claims, which the United States removed to district court under the FTCA (specifically, 28 U.S.C. § 2679) on the basis that Baker, Seeger, Perry, and Schwartz were acting within the scope of their federal employment at the time of the incidents alleged in the complaint. *Semmerling v. Bormann, et al.*, No. 18 C 4432 (N.D. Ill.) ("*Semmerling II*"), R. 1. Following removal, the United States moved to dismiss Semmerling's complaint for failure to exhaust, R. 7, and the district court subsequently dismissed *Semmerling II*. R. 9.

Semmerling presented an administrative FTCA claim, and following its denial, Semmerling brought this third lawsuit. In this case, Semmerling asserted a negligence claim against the United States and Bormann alleging: (1) that the defendants "had a duty to protect Semmerling," R. 1 ¶ 93; (2) that "as part of the defense team, the team members owed a duty to protect one another from allowing sensitive information to be revealed" to the accused, *id.* ¶ 96; (3) that the defendants "breached this duty by revealing the sensitive information that Semmerling was homosexual," *id.* ¶ 97; and (4) that since discovering this revelation, Semmerling has suffered damages to his

6

professional reputation and injuries such as becoming "physically and emotionally ill," *id.*¶¶ 98-99.   Semmerling also brought an intentional infliction of emotional distress claim against the United States and Bormann, alleging that: (1) defendants' conduct was "extreme and outrageous," *id.* ¶ 104; (2) defendants "exposed Semmerling's sexual orientation to [the accused] knowing [the accused's] views on homosexuality," *id.* ¶ 105; (3) "defendants recklessly disregarded the probability that the conduct would cause Semmerling emotional distress," *id.* ¶ 106; and (4) defendants' actions caused Semmerling "extreme emotional distress and he became fearful of his life," *id.* ¶¶ 108, 110.   Finally, Semmerling also asserted two counts of defamation against Bormann.  *Id.* ¶¶ 54-87.

Both defendants (the United States and Bormann) moved to dismiss.  R. 15, 22.  The United States argued that Semmerling's—intentional infliction of emotional distress and failure-to-protect claims were barred by the FTCA's intentional-torts and foreign-soil exceptions, 28 U.S.C. § 2680(h) and (k).  *Id.* at 7-10.  The United States also asserted that Semmerling's negligence claim (based on a duty to protect) failed because the United States did not owe a duty to protect Semmerling, that Semmerling failed to allege a special relationship between him and the United States, and that Semmerling could not allege that any supposed breach actually resulted in a reasonably foreseeable criminal attack.  *Id.* at 10-11.  Finally, the United States asserted that its conduct was

7

protected by Illinois's absolute litigation privilege. *Id.* at 12-14. In support of her motion to dismiss, Bormann likewise argued that Illinois's absolute litigation privilege barred plaintiff's claims and that Semmerling failed to state a claim for failure to protect. R. 16. Simultaneous to the United States' motion to dismiss, the United States also filed a motion to stay the proceedings to prevent interference with the 9/11 criminal proceedings in Guantanamo Bay. R. 24, 25.

In response to the United States' motion to dismiss, Semmerling argued that his intentional infliction of emotional distress claim was not barred by the intentional tort exception of the FTCA and, further, that the claim did not arise out of a defamation claim. R. 30. Semmerling also argued that his claims were not barred by the FTCA's foreign-soil exception. *Id.* at 2-3. He also argued that it was too early in the litigation to determine whether the foreign-soil exception applied and that the court should conduct an evidentiary hearing that would include "live testimony from" accused terrorist Bin Atash to determine "the geographic locations of the statements" made. *Id.* at 4. As to Semmerling's failure-to-protect claim, Semmerling argued that the United States had voluntarily undertaken a duty to protect Semmerling and that Semmerling has suffered physical and emotional harm as a result of learning that his sexuality was disclosed to the accused. *Id.* at 5-8. Semmerling also argued that Illinois's absolute litigation privilege did not bar his claims

8

because the statements were not related to the litigation. *Id.* at 9-12. Semmerling's arguments in response to Bormann's motion to dismiss were similar—that the absolute privilege did not bar his claims and that Bormann had voluntarily undertaken a duty to protect Semmerling.  R. 31.

On the 18th anniversary of the 9/11 attacks, the district court granted the defendants' motions to dismiss.  R. 41.  The district court concluded that Semmerling's intentional infliction of emotional distress claim was not barred by the FTCA's intentional tort exception because the claim "is not a tort enumerated in" the express language of the statute and, moreover, Semmerling's claims did not arise under one of the specifically enumerated torts (defamation) because his claims were "not defamation claims in disguise." *Id.* at 4-5.  The district court also concluded that Semmerling's claims were not barred by the FTCA's foreign-soil exception because the "allegations do not unambiguously establish that the defense team told the client about his sexuality in a foreign country." *Id.* at 6.  Thus, the district court concluded that "because the plaintiff's allegations do not unambiguously establish that his claims fall under either [FTCA] subsection, [Semmerling's] claims are not barred by sovereign immunity." R. 41 at 5.  However, the district court did conclude that Semmerling had failed to state claims for negligent failure to protect and intentional infliction of emotional distress. *Id.* at 6-7.  The district court found that the defense team did not owe Semmerling a duty and,

specifically, that Illinois courts have rejected a common law duty to safeguard personal information. *Id.* at 6-7. Further, the district court held that the complaint contained no allegations that any member of the defense team (aside from possibly Bormann) voluntarily undertook a duty to safeguard plaintiff's sexual orientation and not disclose it to the accused. *Id.* at 7. The district court also found that Semmerling's intentional infliction of emotional distress claim failed because the defense team's outing of plaintiff's sexual orientation was "not extreme or outrageous" and because the allegations did not support an inference that the defense team intended to inflict emotional distress on Semmerling. *Id.* at 7-8. While the court did not address whether the absolute litigation privilege barred the claims against the United States arising from the government lawyers' actions, it did conclude that the privilege barred Semmerling's claims against his private attorney, Bormann. *Id.* at 3-4.

Semmerling filed a timely motion for reconsideration, arguing that the district court had premised its ruling on facts that were "inaccurate and/or incomplete." R. 43 at 2. The court denied the motion for reconsideration and reiterated its prior holding. R. 44. This appeal followed.

10

## Summary of the Argument

The district court correctly dismissed Semmerling's claims against the United States (negligence and intentional infliction of emotional distress).  As to Semmerling's negligence claim, the district court correctly determined that the United States neither *owed* nor *undertook* a duty to protect Semmerling's personal information from being disclosed to the accused.  Because the United States did not have a duty to Semmerling, Semmerling did not state a claim for negligence.   Semmerling also failed to state a cognizable claim for intentional infliction of emotional distress because the federal employees' alleged wrongful conduct was neither extreme nor outrageous and, further, Semmerling failed to allege that the federal employees acted with malicious intent.  As such, the district court's dismissal of the two claims against the United States should be affirmed.

Alternatively, this court can affirm the district court's dismissal of the claims against the United States because they are barred by the FTCA's foreign-soil exception, 28 U.S.C. § 2680(k).  It is well settled that the foreign soil exception to the FTCA, 28 U.S.C. § 2680(k), bars "[a]ny claim arising in a foreign country."  Semmerling's allegations center around alleged wrongful conduct and injuries that can only have occurred on foreign soil—Cuba—where Walid bin Attash has been held for well over a decade.  That is the only reasonable inference about *where* the alleged terrorist was told about

11

Semmerling, and Semmerling of course knows that. Thus, this court should affirm the district court's dismissal of Semmerling's negligence and intentional infliction of emotional distress claim because it is barred by the FTCA's foreign-soil exception.

## Argument

### I. Standard of Review

This court reviews *de novo* the dismissal of a complaint for lack of subject matter jurisdiction, *Fuqua v. U.S. Postal Serv.*, 956 F.3d 961, 964 (7th Cir. 2020), or for failure to state a claim, *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 859 (7th Cir. 2018), and may affirm a dismissal on any ground that the record supports, *id.*

The court reviews the denial of a Rule 59(e) motion for abuse of discretion. *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 628 (7th Cir. 2020). However, Semmerling makes no argument regarding the district court's denial of his Rule 59(e) motion and thus waives or forfeits it. *Soriano v. Town of Cicero*, 521 F. App'x. 565, 567 (7th Cir. 2013).

### II. Semmerling Has Basically Waived Any Meaningful Argument on Appeal

As this court rightly characterized Semmerling's appellant brief when denying the United States motion for summary affirmance, the brief is "substantively deficient in multiple ways." Dkt. 34, Op., at 2, *Semmerling v.*

*Bormann*, 970 F.3d 886, 887 (7th Cir. 2020).  Semmerling's appellate brief focuses entirely on the district court's denial of his request to take discovery and alleged failure to consider the "cultural context" of Semmerling's claims, but the brief fails to substantively address the stated bases.  This court has already explained that Semmerling's brief in this case "does not identify any legal errors in the district court's dismissal order."  Dkt. 34 at 3; 970 F.3d at 888.  As such, Semmerling has waived any argument that could result in reversal.

This court outlined the significant procedural and substantive shortcomings in Semmerling's appellate brief, noting that Semmerling's brief did not comply with Federal Rule of Appellate Procedure 28, which requires briefs to include a statement of the case that sets out "facts relevant to the issues submitted for review."  Dkt. 34 at 2-3, 970 F.3d 887-888 (quoting Fed. R. App. P. 28(a)(6)).  This court explained that Semmerling's statement of the case is "two sentences long and gives only the procedural posture."  *Id*.  The court also pointed out that while Semmerling complains that the district court should have ordered discovery to add cultural context to the complaint, Semmerling failed to "describe any discovery requests either that he made or that the district court denied."  *Id*.  Further, this court explained that the appellant brief "includes almost no legal citations," that the argument section "does not identify any legal errors in the district court's dismissal order," and

that Semmerling failed to articulate how the lack of discovery order "prejudiced him." *Id.*

In light of the brief's shortcomings, as well as other factors that the motions panel gleaned (*i.e.,* COVID-19 and Semmerling's counsel's health concerns), this court permitted Semmerling to request leave to strike his original brief and submit a new brief that was compliant with Rule 28 within one week. *Id.* at 5. But Semmerling did *not* respond to the court's generous offer and did not file a new brief and, thus, the court ordered the United States to respond to Semmerling's existing appellate brief. Dkt. 36. In denying the United States' summary affirmance motion, the court also indicated that the United States was "free to raise arguments for dismissal under Rule 28 in its brief." Dkt. 34 at 4, 970 F.3d 889. We accept that invitation.

For all of the reasons stated in the motion for summary affirmance and this court's decision regarding the motion for summary affirmance, Semmerling's brief is wholly deficient. Semmerling fails to articulate how the district court erred when it determined that he failed to allege cognizable claims against the United States for negligence and intentional infliction of emotional distress. "A party waives arguments that are not presented in the opening brief." *Bernard v. Sessions*, 881 F.3d 1042, 1048 (7th Cir. 2018). As a result of Semmerling's failure to address these arguments in his opening brief, he has waived any challenge to the dismissal of his claims. *See United States v.*

14

*Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) (holding that appellant "waived this issue because he did not address this question of first impression in detail in his opening brief."); *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 190 (7th Cir. 2011) (It is not enough "to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))). Because Semmerling's briefing choices must at this point be considered intentional, this is a case of waiver, not forfeiture, so even plain-error review should not be available. *See Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020).

Further, to the extent that Semmerling claims that the district court erred when it denied his request to conduct discovery and when it failed to consider the "cultural context" of his claims, these arguments are perfunctory, underdeveloped, and lacking in any factual or legal support. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) (finding waiver where the appellee "devoted only one paragraph to the harmless-error argument and cited, against a significant amount of contrary authority, no potentially helpful authority"); *United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) (explaining that an appellant's failure to sufficiently present an argument in the opening brief results in waiver because this "prevent[s] the opposing party from having the opportunity in its brief to respond and fully air the arguments on the other

15

side"). Besides, "lack of cultural context" is not a recognized flaw that renders district court decisions erroneous. Thus, this court should conclude that Semmerling has waived any argument challenging the district court's dismissal of his claims against the United States and affirm on that ground.

## III.  The District Court Properly Dismissed Semmerling's Negligence Claim Against the United States

Because the United States did not owe Semmerling a duty to protect his personal information from disclosure and it did not voluntarily undertake a duty to protect this information, the district court was correct in determining that Semmerling failed to state a cognizable claim for negligence. Indeed, Illinois courts have rejected a common law duty to protect personal information, and Semmerling failed to plead that the federal employees took any voluntary measures to establish a duty. As such, the district court's dismissal of the claims against the United States for failure to state a claim should be affirmed.

To "recover damages based upon a defendant's alleged negligence, a plaintiff must allege and prove that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *First Springfield Bank & Tr. v. Galman,* 720 N.E.2d 1068, 1071 (Ill. 1999). The general rule is that there is "no affirmative right to governmental aid" to protect individuals from harm. *DeShaney v.*

16

*Winnebago County Dep't. of Soc. Serv.,* 489 U.S. 189, 195-96 (1989). Thus, as a preliminary matter, the United States did not owe a general duty to protect Semmerling.

To the extent that Semmerling alleges that the members of the criminal defense team had a duty to protect the disclosure of his sexual orientation to the accused and breached that duty when they made the disclosure, an Illinois appellate court has expressly declined to recognize a common law duty to safeguard personal information. As the district court explained, Illinois has "rejected 'a new common law duty to safeguard . . . personal information.'" R. 41 at 6 (quoting *Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 28-29 (Ill. App. Ct. 2010) *appeal denied*, 949 N.E.2d 657 (Ill. 2011)); *see also Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 816 (7th Cir. 2018) ("*Cooney* then rejected "'a new common law duty" to safeguard information,' writing that 'we do not believe that the creation of a new legal duty beyond legislative requirements,'—i.e., beyond notice—'is part of our role on appellate review.'") (quoting *Cooney*, 943 N.E.2d at 28-29). Absent a duty, Semmerling did not sufficiently allege a negligence claim.

Further, the district court correctly concluded that Semmerling failed to allege any facts to support a claim that the federal employees voluntarily *undertook* a duty to protect Semmerling's personal information and/or sexual orientation. There is only "an affirmative duty of care . . . where a voluntary

17

undertaking is shown." *LM ex rel. KM v. United States,* 344 F.3d 695, 700-01 (7th Cir. 2003) (affirming dismissal of FTCA claim against the United States where plaintiff failed to sufficiently allege that the Postal Service had voluntarily undertaken a duty to protect children from a specific mail carrier). Pursuant to the Restatement (Second) of Torts § 324A, a party is liable for breach of a voluntary undertaking if: (a) "a party undertakes to do something and then fails to exercise reasonable care in a way that increases a third party's risk of harm"; (b) a party "undertakes to perform a duty that a different party was obligated to perform and then negligently fulfills its duty"; or (c) "a third party relies to its detriment on the fact that a duty has been voluntarily undertaken." *LM ex rel. KM*, 344 F.3d at 701. "Under this theory, the scope of an assumed duty is limited to the extent of the undertaking, and must be narrowly construed." *Andrews v. Marriott Intern., Inc.*, 61 N.E.3d 1105, 1117 (Ill. App. 2016) (internal quotation marks omitted) (quoting *Jablonski v. Ford Motor Co.*, 995 N.E.2d 1138, 1163 (Ill. 2011)). Further, a "voluntary undertaking is just that—voluntary—and as such, the scope of the duty that is assumed is limited to the extent of the undertaking." *LM ex rel. KM*, 344 F.3d at 701. Semmerling did not state such a claim.

There was nothing in the complaint that was sufficient to show that *any* federal employee voluntarily undertook a duty to keep Semmerling's sexual orientation a secret from the accused. Specifically, there are no allegations

that Schwartz, Seeger, Perry, or Baker *promised* Semmerling that they would not disclose Semmerling's personal information.   Nor does the complaint outline any distinct security measures or efforts that these employees took to protect Semmerling's personal information from disclosure.   Ultimately, there are no plausible allegations that support a claim that Semmerling's co-workers voluntarily undertook a duty to protect Semmerling from the accused.   *See, e.g.*, *Andrews*, 61 N.E.3d at 1117-19 (affirming dismissal of suit and concluding that hotel did not undertake a duty to protect guest's personal information and privacy from another guest); *Tedrick v. Cmty. Res. Ctr., Inc.,* 920 N.E.2d 220, 224–30 (Ill. 2009) (affirming dismissal of negligence claim against a husband's mental health care providers where the providers could not have voluntarily undertaken a duty to protect the wife from his violent acts because the providers did not render a service to the wife or for her protection).   As such, the district court was correct when it concluded that the complaint contained no allegations that any federal employee "voluntarily undertook a duty that they otherwise did not owe."   R. 41 at 7.   Again, with no duty to be breached, the district court's dismissal of Semmerling's negligence claim should be affirmed.

19

**IV.   The District Court Properly Dismissed Semmerling's Intentional Infliction of Emotional Distress Claim Against the United States**

Semmerling's other claim against the United States (intentional infliction of emotional distress) also did not state a plausible claim for relief and, therefore, was properly dismissed. To state a claim, a plaintiff is required to provide a "short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts, and the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or a "recitation of the elements of a cause of action" will not do. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Semmerling did not state an intentional infliction of emotional distress claim.

To succeed on a claim for intentional infliction of emotional distress, a plaintiff must plead that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact

caused severe emotional distress." *Swearnigen–El v. Cook Cty. Sheriff's Dept.,* 602 F.3d 852, 864 (7th Cir. 2010); *see also Schweihs v. Chase Home Finance,* 77 N.E.3d 50, 63 (Ill. 2016) (to prevail on a claim, (1) "the conduct involved must be truly extreme and outrageous," (2) the "actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress," and (3) the "conduct must in fact cause severe emotional distress").

As a preliminary matter, Semmerling attributed little to no wrongful conduct on the part of federally employed attorneys Baker, Perry, or Seeger. For example, he conclusively alleges that the members of the defense team "embarked on character assassination," but he provides no specifics as to who said what or what was said. R.1 ¶¶ 48, 51. Similarly, Semmerling claimed that the criminal defense *team* made statements that Semmerling's "lifestyle was a threat to" the accused and that Semmerling has a "pathological and self-serving streak in management of relationships with high profile terrorism defendants," (R. 1 ¶ 51) but, again, he does not attribute any specific statement to any specific individual or distinguish between the federal attorneys and the private attorney. Indeed, Semmerling does not allege that Perry or Seeger acted alone to do anything wrongful. Further, Semmerling never alleges that Perry, Seeger, or Baker discussed Semmerling's sexuality with the accused, told the accused that Semmerling was "infatuated" with him, or made any

sexual-orientation-specific remarks about Semmerling. As to these three federal employees, Semmerling's complaint is simply lacking in sufficient details to adequately state a claim for intentional infliction of emotional distress. Further, Semmerling's emotional distress claim against the United States cannot be premised on the actions of Bormann, who is not a federal employee. *See* 28 U.S.C. 1346(b)(1) (waiving the United States' immunity only of wrongful acts committed by federal *employees* acting within the scope of their employment). Ultimately, Semmerling's vague and conclusory allegations regarding Baker, Seeger, and Perry fail to state a claim for intentional infliction of emotional distress.

As to any alleged conduct on the part of Schwartz, as pleaded, it was neither extreme nor "intolerable in a civilized community." *Swearnigen–El*, 602 F.3d at 864; *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). A defendant's conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Id.* "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not amount to extreme and outrageous conduct. *Honaker*, 256 F.3d at 490. Instead, "to serve as a basis for recovery, the defendant's conduct must be such that the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to

exclaim: Outrageous!" *Id.* (citation and internal alteration omitted). That was not the case here.

Semmerling alleged that Schwartz instructed Semmerling to not disclose to the accused that Semmerling was gay, had served in Iraq and Afghanistan, and was Jewish. R. 1 ¶ 37. He also alleged that Schwartz and Bormann ordered Semmerling to leave Guantanamo Bay. *Id.* ¶ 48. Semmerling claims that following his departure, he learned that Schwartz and Bormann had informed the accused that Semmerling was gay, and that Bormann (at presumably the same time) told the accused that Semmerling was infatuated with the accused. *Id.* ¶ 49. He also alleged that Schwartz told the accused that Semmerling was "endangering" the accused's life. *Id.* ¶ 50. As the district court explained, Schwartz's actions may have been "offensive," but were not extreme or outrageous. R. 41 at 7. Simply put, "the bar is high" and Schwartz's alleged conduct was not truly extreme or outrageous. *Andersen v. Village of Glenview*, 82 F. App'x 625, 629 (7th Cir. July 21, 2020); *see, e.g. Cook v. Winfrey*, 141 F.3d 322, 331-32 (7th Cir. 1998) (defendant's statements that plaintiff was "a liar," "not to be trusted or believed," that she never had a relationship with the plaintiff, and that the lawsuit was "all a pack of lies" did not amount to extreme and outrageous conduct); *Mohammed v. Hamdard Ctr. for Health & Human Servs.*, 2020 WL 401966, at ¶ 26 (Ill. App. Ct. Jan. 22, 2020) ("[P]laintiff generally alleged that defendants' conduct in accusing him of

sexual abuse of his daughters and former wife was extreme and outrageous, intended to harm him, and caused him . . . emotional distress. Those general allegations of extreme and outrageous conduct were certainly insulting but come nowhere close to satisfying the requirements of a claim for IIED.").

Further, as the district court concluded, there are no allegations in Semmerling's complaint that a United States employee—Baker, Seeger, Schwartz, or Perry—had personal animosity towards Semmerling, nor are there allegations that these individuals *intended* to harm Semmerling.  R. 41 at 8.  While the complaint alleges that "defendants exposed Semmerling's sexual orientation" to the accused "knowing" the accused's "views on homosexuality," R. 1 ¶ 105, nowhere in the complaint does Semmerling allege that these individuals intended to cause him harm, which is fatal to his complaint.  As such, the district court correctly concluded that Semmerling failed to state a claim for intentional infliction of emotional distress.

## V.  Semmerling's FTCA Claims Are Barred by the Foreign-Soil Exception

While the district court concluded that Semmerling had failed to state claims for intentional infliction of emotional distress claim and negligence, the dismissal of these claim may also be affirmed on the alternative ground that it is barred by the foreign-soil exception to the FTCA.  28 U.S.C. § 2680(k).  The Federal Tort Claims Act ("FTCA"), 28 U.S.C. 1346(b), 2671-2680, authorizes

suits against the government for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "The FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort." *Millbrook v. United States*, 569 U.S. 50, 50 (2013) (internal citation marks omitted). The FTCA provides the exclusive remedy for tort actions against the United States. 28 U.S.C. § 2679(a) and (b)(1). Further, while a "person injured by a federal employee may seek recovery directly from the United States under the FTCA, [ ] the FTCA bars "[a]ny claim arising in a foreign country." *Hernandez v. Mesa*, 140 S. Ct. 735, 748 (2020) (quoting § 2680(k)).[4]

The Supreme Court has explained that the FTCA's foreign soil exception "*bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred.*" *Sosa v. Alvarez-Machain,* 542 U.S. 692, 712 (2004) (emphasis added). A cause of action "arises"

---

[4] Multiple courts have recognized that Guantanamo Bay is a foreign country for purposes of the FTCA. *See, e.g., Boumediene v. Bush*, 553 U.S. 723, 754 (2008) ("Cuba, not the United States, maintains sovereignty, in the legal and technical sense of the term, over Guantanamo Bay."); *see also Al Janko v. Gates*, 831 F. Supp. 2d 272, 284 (D.D.C. 2011); *Al-Zahrani v. Rumsfeld*, 684 F. Supp. 2d 103, 119 (D.D.C. 2010).

where "the last act necessary to establish liability occurred; . . . *i.e.*, the jurisdiction in which injury was received." *Id. at* 705 (internal citations and quotations omitted).

In this case, Semmerling's tort claims are rooted in the defendants' alleged wrongful actions at Guantanamo Bay. As a preliminary matter, the accused has been held at Guantanamo Bay at all relevant times. *See* R. 1 (Semmerling traveled to Guantanamo Bay to meet with client and has met with the client numerous times). The primary conduct alleged here—exposing Semmerling's sexual orientation to the accused and telling the accused that Semmerling was pursuing a romantic relationship with him—must have occurred at Guantanamo Bay. Indeed, there are no allegations that suggest that Washington D.C. or Chicago was the place where this tortious activity occurred, nor could there be—the accused has been held at Guantanamo Bay since 2006. Likewise, Semmerling claims that the defendants' duty to protect sensitive information from being revealed to the accused was allegedly breached when the accused was informed of Semmerling's sexual orientation. R. 1 ¶¶ 96-97. Once again, this revelation to the accused could have only occurred at Guantanamo Bay in Cuba. As to Semmerling's injuries, he claims that he was wrongfully ordered to leave Guantanamo Bay—that must have happened in Cuba as well. R. 1. ¶ 47. As a result of the events that transpired at Guantanamo Bay, Semmerling claims that he suffered various injuries,

including: the loss of his job (at Guantanamo Bay), the suggestion that Semmerling was unable to perform his job duties for the defense team of the accused (at Guantanamo Bay), the loss of his professional reputation, and emotional distress. *Id.* ¶¶ 47-51, 65, 66, 97-99. Those are all claims "arising in a foreign country." 28 U.S.C. § 2680(k)

Further, while Semmerling may contend that he continues to suffer injuries from the defendants' wrongful conduct *within the United States*, those allegations of injuries are simply derivative of the original injury. The D.C. Circuit has stated that a plaintiff "cannot plead around the FTCA's foreign-country exception simply by claiming injuries . . . that are derivative of the foreign-country injuries at the root of the complaint." *Harbury v. Hayden*, 522 F.3d 413, 423 (D.C. Cir. 2008). In this case, Semmerling's primary injuries occurred in Cuba, and any continuing injuries that Semmerling has suffered as a result of the alleged wrongful conduct are simply derivative of his foreign-country injuries. *See, e.g., Gross v. United States*, 771 F.3d 10, 12-13 (D.C. Cir. 2014) (foreign-country exception barred plaintiffs' negligent infliction of emotional distress claim, rejecting the plaintiff's argument that his "primary" economic injuries "have occurred exclusively in the United States," and concluding that the plaintiff's complaint "establishes that the [plaintiffs'] alleged economic injuries are based entirely on injuries suffered by Ms. Gross

in Cuba and are derivative" of the foreign-soil injuries (internal citation and quotation marks omitted)).

Ultimately, because all elements of Semmerling's claims arose on foreign soil, Semmerling's claims are barred by the foreign soil exception. *See, e.g., Brundage v. United States Information Agency*, 00-3124, 2000 WL 1909634, at *2 (7th Cir. Dec. 27, 2000) (defamation claim arising out of publication of a newspaper article in Malaysia was precluded under FTCA's foreign soil exception); *Ziya v. Global Linguistic Solution*, 11-CV-1398, 2012 WL 1758611, at *1-2 (D. Or. May 15, 2012) (intentional infliction of emotional distress and slander and libel claims arising out of plaintiff translator's firing in Iraq excluded under foreign soil exception); *Galustian v. Peter*, 802 F. Supp. 2d 700, 707 (E.D. Va. 2011) (noting that the conduct and injury occurred in Iraq and concluding that the plaintiff's tort claims based upon a federal employee's participation in "disseminating an allegedly defamatory e-mail" barred by the foreign soil exception).

## Conclusion

For the foregoing reasons, this court should affirm the judgment of the district court.

Respectfully submitted,


JOHN R. LAUSCH, Jr.
United States Attorney

THOMAS P. WALSH
Assistant United States Attorney
Civil Division Chief

s/ Kathleen Marie Flannery
KATHLEEN MARIE FLANNERY
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-7223
kathleen.flannery@usdoj.gov

**Certificate of Service**

I hereby certify that on October 26, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                              s/ Kathleen M. Flannery
                              KATHLEEN M. FLANNERY
                              Assistant United States Attorney
                              219 South Dearborn Street
                              Chicago, Illinois 60604
                              (312) 353-7223
                              kathleen.flannery@usdoj.gov